**RISTVEDT–JOHNSON, INC.**
**and Cummins–Allison**
**Corp., Plaintiffs,**

v.

**BRANDT, INC., Defendant.**

Civ. A. No. 88–C–3834.

United States District Court,
N.D. Illinois, E.D.

April 2, 1992.

Stephen G. Rudisill, Edward L. Foote, Robert J. Crawford, Chicago, Ill., for plaintiffs.

Thomas W. Ehrmann, David R. Cross, Milwaukee, Wis., Michael Zaleski, Madison, Wis., for defendant.

## MEMORANDUM OPINION

RADER, Circuit Judge.

Plaintiffs, Cummins–Allison Corporation and Ristvedt–Johnson, Inc., (Cummins) sued Brandt, Inc. for infringement of several patents. These patents described high-speed coin sorting machines. After a trial lasting ten days, a jury concluded that Brandt had infringed Cummins' three patents and had not shown the invalidity of the patents. Both Cummins and Brandt agreed to present to the court Brandt's assertion that inequitable conduct rendered Cummins' patents unenforceable. Because Brandt did not prove inequitable conduct in the prosecution of any patents-in-suit, this court rejects Brandt's defense.

## BACKGROUND

In 1988, Cummins filed a patent infringement suit against Brandt. Cummins charged that Brandt infringed six patents—United States Patent Nos. 4,098,280; 4,234,003; 4,444,212; 4,531,531; 4,549,561; and 4,731,043. These patents describe high-speed coin sorting machines.

In general terms, these machines allow an operator to pour a large quantity of assorted coins into a central hopper. The hopper funnels the coins onto the center of a rotating disc. The disc presses the coins against a guide plate. As the disc continues to rotate, the guide plate aligns the coins in single file against its outer edge or the peripheral limit guide. Coins move at high speed along this edge until released into a slot of the proper diameter. Thus, nickels find a nickel-sized slot, dimes a dime-sized slot, and so forth. Once in the proper slot or exit guide, the coins move out of the sorter. Counting devices detect each coin as it passes out of the coin release guides. Thus, the machine sorts and counts at the rate of up to 6,000 coins per minute. Public transportation companies, banks, department stores, casinos, and other institutions which handle vast quantities of coins often use these high-speed coin sorters.

In July 1991, this court notified the parties to prepare for trial. Cummins moved to dismiss the '212, '531, and '561 patents from its complaint. Rather than welcoming a narrowing of the complaint, Brandt opposed this motion. This court permitted the parties to present arguments on Cummins' motion. Transcript of Proceedings (Tr.), Sept. 17, 1991, p. 2, and pp. 15–21. Brandt opposed the motion because it felt it could prove inequitable conduct in the prosecution of the '212, '531, and '561 patents. Furthermore, it asserted that inequitable conduct on these patents tainted the remaining patents—the '280, '003, and '043 patents. On the basis of Brandt's allegation that it could prove that inequitable conduct on the '212, '531, and '561 patents tainted and rendered unenforceable the patents-in-suit, this court agreed to hear that evidence. The parties agreed to present the inequitable conduct issue to the court at the conclusion of the jury trial.

Before trial, this court dismissed with prejudice Cummins' complaint that Brandt's accused device infringed the '212,- '531, and '561 patents. Therefore, Cummins could not and did not present at trial any evidence about infringement of these patents. During trial, this court limited Cummins to evidence about Brandt's alleged infringement of the '280, '003, and '043 patents. In special verdicts, the jury determined that Brandt infringed each of the patents-in-suit. The jury also determined that Brandt had not proven the invalidity of the '280, '003, or '043 patents.

At the conclusion of trial, the parties submitted to the court stipulated facts [1] and memoranda of law on the inequitable conduct allegations. The uncontested material facts on inequitable conduct focus on two events: a 1979 trade show where Cummins displayed a coin sorter and a 1982 business meeting between Cummins and the De La Rue Company about coin sorters.

### The 1979 Trade Show

On May 20–23, 1979, Cummins exhibited a pre-production coin sorter at the American Bankers Association trade show in Anaheim, California. The high-speed coin sorter at the Anaheim trade show had a guide plate similar to the sorter head disclosed in the '280, '003, and '212 patents. Ristvedt–Johnson had filed the '280 and '003 patent applications long before this trade show.

The trade show sorter also had mechanisms for deshingling coins. Shingling occurs when coins overlap and stack up under the guide plate. To sort effectively, a coin handling machine must align a single layer of coins against its outer edge.

The '212 patent discloses means for deshingling coins. The patent describes a notch at the point where the rotating disc presses coins against the guide plate or sorter head. The notch ensures that coins slip in a single layer into the alignment area. Patent '212, col. 7, lines 1–6. A taper in the wall profile of the guide plate also separates shingled coins. The '531 and '561 patents—dismissed before trial—disclose ridges and recesses for deshingling

---

**1.** The parties submitted separate stipulated facts. Although nearly in full agreement, the parties each included some additional information in their version of the undisputed facts. This court, however, did not find it necessary to rely on any fact potentially in dispute.

coins similar to the notch and tapered walls in the '212 patent.

The '043 patent—one of the patents-in-suit—also claimed tapered edges and recesses to deshingle coins. In prosecution of the '043 patent, Ristvedt–Johnson cited as prior art both the '212 and '531 patents, which disclosed, among other features, deshingling means.

Cummins did not disclose the trade show sorter to the United States Patent and Trademark Office during prosecution of the '212, '531, '561, and '043 patents. The 1979 show antedates the filing dates of these patents by more than one year. Ristvedt–Johnson filed applications on the '212 in November 1980, the '531 in June 1983, the '561 in December 1984, and an original application on the '043 in December 1983.[2] Because filed in 1976 and 1978, the '280 and '003 are not subject to Brandt's allegations about the trade show.

In March 1989, Cummins—Ristvedt–Johnson's exclusive licensee—disclaimed claims 1–7 and 9 of the '212 patent. Cummins conceded that those claims define coin sorter features that were in the 1979 trade show sorter. Claim 10, one of the two remaining claims, describes the coin deshingling means.

### De La Rue Meeting

Pursuant to a confidentiality agreement, Cummins' officers met on July 1, 1982 with officers of De La Rue, an English corporation. The De La Rue company markets currency and coin handling equipment. Both companies wanted to explore the possibility of forming a business relationship to develop coin handling products.

Each company came to the 1982 meeting intent upon presenting its own concept. De La Rue presented a coin packager; Cummins presented a coin counter and loader. Each concept applied very different solutions to the problem of handling coins. During the 1982 meeting, Cummins tried to demonstrate a coin counting and loading prototype. However, the demonstration did not work.

Mr. Jones, Cummins' Chief Executive Officer, was a principal participant in the meeting with De La Rue. He testified at trial that Cummins wanted to persuade De La Rue that the coin counting and loading technology would mesh well with coin packaging technology. Cummins hoped to interest De La Rue in supplying funds to develop the coin counter and loader concept. Mr. Jones testified that Cummins did not intend to sell anything at the July 1982 meeting. Mr. Raterman, Cummins' Director of Engineering, described the results of the De La Rue meeting to Victor Ristvedt, one of the '043 inventors. In a July 8, 1982 letter, Mr. Raterman stated:

> We presented the concept studies, a proposed mechanical design and discussion of the technology to DELARUE Representatives on July 1, in the Cummins' plant.

Reducing the concept discussed during the 1982 meeting to a workable commercial product took five years.

Cummins did not disclose the De La Rue meeting to the PTO during prosecution of the '043 patent. The De La Rue allegations only apply to the '043 patent which Ristvedt–Johnson filed originally in 1983. In July 1987, Cummins filed a patent application which issued as United States Patent No. 4,966,570. The '570 patent covers the coin sorter portion of the coin counter and loader featured in the De La Rue meeting. In conjunction with this application, Cummins disclosed the De La Rue meeting to the PTO.

## DISCUSSION

### Standard for Inequitable Conduct

█ To prove inequitable conduct, a defendant must show by clear and convincing evidence that a reference is (1) material prior art; (2) that the applicant had or should have had knowledge of the prior art and its materiality; and (3) the applicant failed to disclose the prior art to the PTO with the intent to mislead. *Fox Indus. v. Structural Preservation Sys.*, 922 F.2d

---

**2.** Ristvedt–Johnson abandoned its 1983 effort and refiled in June 1986 and refiled again in January 1987 the application which resulted in United States Patent No. 4,731,043.

801, 803, 17 USPQ2d 1579, 1580 (Fed.Cir. 1990). Thus, the doctrine of inequitable conduct requires "conduct sufficient to support an inference of culpable intent." *Northern Telecom v. Datapoint Corp.*, 908 F.2d 931, 939, 15 USPQ2d 1321, 1327 (Fed.Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 296, 112 L.Ed.2d 250 (1990). A finding of gross negligence alone does not satisfy this intent requirement. *Kingsdown Medical Consultants v. Hollister Inc.*, 863 F.2d 867, 876, 9 USPQ2d 1384, 1389 (Fed. Cir.1988), *cert. denied,* 490 U.S. 1067, 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989).

 Thus, this court must first make two threshold inquiries: (1) whether the nondisclosed information satisfies a minimum level of materiality, and (2) whether the applicant's conduct shows an intent to mislead the PTO. *Halliburton Co. v. Schlumberger Technology,* 925 F.2d 1435, 1439–40, 17 USPQ2d 1834, 1838 (Fed.Cir. 1991). If the record satisfies both of these thresholds, then this court must balance the separate elements of materiality and intent to deceive. *Id.; Under Sea Indus. v. Dacor Corp.*, 833 F.2d 1551, 1559, 4 USPQ2d 1772, 1777 (Fed.Cir.1987). This balancing ultimately determines whether the doctrine of inequitable conduct bars enforcement of the contested patents. *Id.* A greater showing of materiality reduces the showing of intent needed to prove inequitable conduct. A showing which barely satisfies the threshold of materiality requires a greater showing of intent to prove inequitable conduct. *Id.*

### The Dismissed Patents

This court dismissed with prejudice Cummins' complaint that Brandt infringed the '212, '531, and '561 patents. Even if Brandt succeeded in proving misconduct in the prosecution of these patents, the jury did not consider these patents. To provide a defense to the jury's infringement verdict, Brandt must either show that Cummins conducted its prosecutions of the '280, '003, or '043 patents inequitably or that Cummins' misconduct otherwise renders these patents-in-suit unenforceable.

 Ristvedt–Johnson filed patent applications which ripened into the '280 and '003 patents long before either the 1979 trade show or the 1982 De La Rue meeting. Thus, neither of these events shows inequitable conduct in the prosecution of the '280 or '003 patents.

### The '043 Patent

The '043 patent issued on a series of three applications beginning with an application in December 1983. None of these applications was connected to applications which ripened into the '212, '531, or '561 patents. Brandt argues that claim 18 of the '043 patent (deshingling means) defines subject matter anticipated by the coin sorter displayed at the 1979 trade show. Thus, according to Brandt, Cummins committed inequitable conduct by failing to disclose the 1979 coin sorter to the PTO.

Brandt also argues that the 1979 trade show sorter anticipated the subject matter in the '212 and '531 patents. Defendant's Memorandum in Support of its Defense, Oct. 29, 1991 at 2 and 4. Brandt's own argument is fatal to its attack on the '043 patent. During prosecution of the '043 patent, Ristvedt–Johnson disclosed as prior art both the '212 and '531 patents. Indeed both the '212 and '531 patents appear as references of record in the '043 patent.

 During prosecution of the '043 patent, the subject matter of the trade show sorter was already before the examiner in the form of the '212 and '531 patents. In particular, the '212 and '531 patents disclosed deshingling technology on which Brandt focuses in its inequitable conduct allegations against the '043 patent. Cummins had no obligation to disclose cumulative prior art or prior art already before the examiner. *Halliburton,* 925 F.2d at 1442; *Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 992, 6 USPQ2d 1601 (Fed.Cir. 1988).

 In light of Cummins' disclosure of the '212 and '531 patents, the 1979 trade show sorter was not material to prosecution of the '043 patent, but merely cumulative prior art. Cummins' failure to disclose the 1979 coin sorter does not support

Brandt's allegations of inequitable conduct. Brandt has not shown by clear and convincing evidence that Cummins withheld material prior art during prosecution of the '043 patent.

The absence of a threshold level of materiality in the undisclosed 1979 coin sorter alone precludes this court from finding inequitable conduct based on the trade show. Nonetheless, this court also notes that the record concerning the trade show does not show even a threshold level of intent to deceive. None of the individuals with knowledge of the 1979 show realized that the event was material to the '043 application. Indeed Cummins timely disclosed to the PTO the '212 and '531 patents which included, among other things, the deshingling means in claim 18 of the '043 patent.

■ Brandt contends that this court cannot enforce the '043 patent because Ristvedt–Johnson did not disclose to the PTO the 1982 De La Rue meeting. Once again Brandt tries to invoke the inequitable conduct doctrine against the '043 patent. This court, however, has the benefit of considerable evidence about the De La Rue meeting presented at trial.

For instance, in response to a question about the purpose of the De La Rue meeting, Mr. Jones testified "it was to discuss a possible development of a product." Tr., Vol. II at 214. He further testified:

The purpose [of the meeting] was to talk to them about using and developing this concept, to be used in a packager.... [W]e wanted to develop a machine, [and] get development money to develop this concept into a machine.

*Id.* at 215–16. When asked by opposing counsel whether Cummins intended to sell the demonstration machine to De La Rue, Mr. Jones testified:

No, it was our intent to get them to— to get some of the money that was required to develop, so we didn't have to spend it all, and we could spread the development cost over a greater production of machines. That's what we were talking about.

Tr., Vol. II at 373. On redirect, Mr. Jones stated that Cummins and De La Rue did not agree on a specific type of product for development. According to Mr. Jones, a very credible witness, Cummins never offered or sold a coin sorter to De La Rue. It took Cummins five years to develop a commercial coin sorting product from the prototype shown at the De La Rue meeting.

During trial, Mr. Raterman corroborated Mr. Jones' account of the meeting. Mr. Raterman testified that Cummins showed De La Rue a "loader sorter." Tr., Vol. VIII at 1608. Mr. Raterman noted that the machine's counting device did not work on the day of the De La Rue demonstration. As noted earlier, Mr. Raterman noted in a 1982 letter that Cummins only "presented ... concept studies, a proposed mechanical design and discussion of the technology to DELARUE." The letter also stated: "The demonstration of the equipment was incomplete." *Id.*

Based upon an independent review of the testimony given at trial and exhibits admitted into evidence, this court finds that the record does not show by clear and convincing evidence that Cummins offered to sell its concept, prototype, or anything else to De La Rue in 1982. Rather the 1982 meeting—conducted under express confidentiality agreements—explored concepts presented by both companies. In the absence of an offer for sale or public use, Brandt's argument for the materiality of the De La Rue meeting fails. The De La Rue meeting was not material to the '043 patent. Cummins therefore had no obligation to disclose the De La Rue meeting during prosecution of the '043 patent.

The jury finding that Brandt had not proven by clear and convincing evidence that the subject matter of the '043 patent was on sale is in complete agreement with this court's analysis of this issue. The United States Court of Appeals for the Federal Circuit has stated:

We [must] presume that the jury resolved the underlying factual disputes in favor of the verdict winner....

*Jurgens v. McKasy,* 927 F.2d 1552, 1557 (Fed.Cir.1991). One of the issues of fact

the jury had to resolve to dismiss any on-sale bar of the '043 was whether Cummins made a definite offer to sell in 1982. *RCA Corp. v. Data Gen.*, 887 F.2d 1056, 1062, 12 USPQ2d 1449, 1454 (Fed.Cir.1989). Thus, in view of the jury's response to Special Verdict Question No. 6,[3] the court may presume that the jury considered and resolved the necessary factual issues when it concluded that the '043 technology was not on sale.[4]

With regard to the intent to mislead element of its inequitable conduct charge, Brandt also did not show, by clear and convincing evidence, that Cummins or Ristvedt–Johnson had any intent to conceal the De La Rue meeting from the PTO. Mr. Phillips, the Ristvedt–Johnson's patent attorney who was responsible for filing the original 1983 '043 patent application, testified in his deposition that he was never questioned about the De La Rue meeting. Brandt presented no persuasive evidence that any person associated with Cummins or Ristvedt–Johnson comprehended the potential significance of the De La Rue meeting to the '043 patent application.

In sum, neither the 1979 trade show nor the De La Rue meeting supports Brandt's allegations of inequitable conduct in prosecution of the '043 patent. Brandt did not show even a threshold level of materiality or intent to deceive in Cummins' failure to disclose these events.

### Unclean Hands Defense

Brandt contends that the unclean hands doctrine should prevent Cummins from seeking enforcement of the '280 and '003 patents. Brandt bases this defense upon allegations that Cummins procured the '212, '531, '561, and '043 patents inequitably.

**3.** Transcript of Proceedings, Vol. XI, p. 2107, lines 11–19.
> THE COURT: Did you respond to Question 6?
> A: Yes.
> THE COURT: Do you find that Brandt has proven by clear and convincing evidence that the subject matter of Claim 33 or 35 was on sale.
> THE COURT: Claim 33?

The Supreme Court provides guidance in applying the unclean hands doctrine in patent cases. *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 54 S.Ct. 146, 78 L.Ed. 293 (1933). The Court applied the unclean hands doctrine "only where some unconscionable act of one coming for relief has an *immediate and necessary relation to the equity that he seeks in respect of the matter in litigation.*" *Id.* at 245, 54 S.Ct. at 147 (emphasis in original). In *Keystone*, plaintiff bribed a witness in an earlier suit to suppress evidence of prior use of an invention. Nonetheless plaintiff received a validity decree and used the decree to obtain an injunction. The Court found a direct relation between the bribery in the earlier proceeding and plaintiff's attempt to enforce the patent in a later case.

The Court reaffirmed its view of the narrow application of the unclean hands doctrine in *Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381 (1945). In *Precision*, the egregious conduct in one proceeding tainted another suit. Precision Instrument's alleged inventor filed a false disclosure during an interference proceeding between Precision and Automotive. The alleged inventor knowingly misrepresented the dates of invention. Automotive discovered the misrepresentation and the parties settled the interference without disclosing the fraud to the PTO. In a suit before the Court to enforce the patents, including the patent tainted by fraud, the Court held all the patents-in-suit unenforceable for unclean hands:

> [T]he history of the patents ... in issue is steeped in perjury and undisclosed knowledge of perjury.

> A: No.
> THE COURT: Claim 35?
> A: No.

**4.** The Patent and Trademark Office reached the same conclusion during the prosecution of United States Patent No. 4,966,570, which includes the loader and sorter shown to De La Rue. The PTO, apprised of the De La Rue meeting, found no on-sale bar.

*Id.* at 816, 65 S.Ct. at 998. The Court further stated that the perjury and undisclosed fraud permeated the entire cause of action.

The Federal Circuit followed the Supreme Court's guidance in *Consolidated Aluminum v. Foseco International,* 910 F.2d 804, 15 USPQ2d 1481 (Fed.Cir.1990). The court affirmed the district court's judgment that Consolidated had intentionally concealed the best mode and disclosed a fictitious inoperable mode for one of the patents-in-suit. The Federal Circuit discerned a significant relationship between the patents-in-suit. As such, the court held Consolidated's concealment "permeated the prosecution of the other patents-in-suit and renders them unenforceable." *Id.* 910 F.2d at 812.

In this case, however, this court has determined that Cummins procured none of the three patents-in-suit inequitably. Brandt has not shown that the alleged inequitable conduct directly taints any of the patents-in-suit. Rather, Brandt argues that the alleged inequitable conduct on the '212, '531, and '561 patents taints the patents-in-suit.

■■■ The doctrine of unclean hands, however, does not support Brandt's allegations. In the first place, acts warranting application of the unclean hands defense must rise to the level of unconscionability. In *Keystone, Precision,* and *Consolidated,* a party bribed a witness to suppress evidence, committed a perjurious act, and deliberately disclosed a fictitious inoperable mode to practice a patent-in-suit. To enforce a patent obtained by bribery, perjury, or intentional fraud would call into question the integrity of the judicial process. A court could not enforce a patent obtained by bribery, for instance, without sanctioning unconscionable (perhaps even criminal) activity. Brandt's allegations—garden-variety inequitable conduct without blatant wilful fraud—do not rise to the level of unconscionability that calls into question the integrity of the court. Thus, even assuming the truth of Brandt's allegations about the '212, '531, '561, and '043 patents, Cummins' alleged conduct would not support an unclean hands defense against the '280 and '003 patents.

■■■ For still another reason, the unclean hands doctrine does not apply in this case. In *Keystone* and *Precision,* the Supreme Court required a connection or relationship between the alleged unconscionable acts and Brandt's request that this court refuse to enforce the patents-in-suit. Brandt, however, proved no immediate and necessary relationship between the '212, '531, '561, and '043 patents and the '280 and '003 patents. Brandt did not prove inequitable conduct on any patent in this lawsuit. Ristvedt–Johnson filed the '280 and '003 patents years before the events supporting the inequitable conduct allegations. Brandt has shown no reason that Cummins' conduct years later on other free-standing patent applications should render the '280 and '003 patents unenforceable.

Thus, Brandt's only alleged link between the inequitable conduct and the patents-in-suit is Cummins itself. Cummins is the exclusive licensee of the patents-in-suit and allegedly committed the later inequitable conduct on other applications. Thus Brandt seems to argue that a party's act of inequitable conduct should reach back in time to cancel any patent protection which might inure to that party's benefit. No language or policy of the Patent Act supports such a harsh penalty for inequitable conduct. In the absence of an "immediate and necessary" link between Brandt's allegations of misconduct and the patents-in-suit, this court cannot presume to apply the unclean hands doctrine.

■■■ Finally, and perhaps most important, one further consideration bars application of the unclean hands defense. Brandt has not shown, by clear and convincing evidence, that plaintiffs procured the '212, '561, and '531 patents through inequitable conduct. Brandt's allegations about these patents rest on a very weak factual foundation.

To the extent the '212, '531, and '561 patents are supported by the original disclosure in the '280 (parent application), dis-

closure of the trade show reflecting the same technology would be cumulative. A more detailed examination of one aspect of that technology, deshingling mechanisms, illustrates this deficiency in Brandt's proof of materiality. Brandt alleges that Ristvedt–Johnson disclosed no deshingling mechanisms to the PTO before the filing of the '212 application. Brandt further alleges that the disclosures of the '280 and '003 patents contain no feature which would function to separate shingled coins. Careful review of the '280 and '003 patents, however, suggests another conclusion. In fact, these patents describe means for deshingling coins with tapered walls. *See e.g.,* Patent '280, col. 4, lines 10–17 and col. 5, lines 24–31; Patent '003, col. 4, lines 21–27 and col. 5, lines 35–42. These references in the hands of one of ordinary skill in the art would make the events of the 1979 trade show at best minimally material to the prosecution of the '212, '561, and '531 patents. Because lacking an offer of sale, the De La Rue meeting was also at best minimally material to the '212, '531, and '561 patents.

Moreover, Brandt produced no strong evidence, either direct or circumstantial, which reflects plaintiffs' intent to mislead the PTO. Brandt did not persuasively rebut evidence that Mr. Ristvedt was unsophisticated in patent matters and Mr. Phillips was aware of neither the trade show nor the De La Rue meeting. Therefore, balancing minimal materiality with little, if any, intent does not rise to the level of culpable conduct needed to prove inequitable conduct on the '212, '531, or '561 patents.

Any one of the above infirmities in Brandt's case would prevent this court from applying the unclean hands doctrine. With three infirmities—no unconscionable act, no immediate and necessary link to the patents-in-suit, and no inequitable conduct as a foundation—this court concludes that the unclean hands doctrine does not apply to this case.

### Conclusion

Brandt did not show inequitable conduct in prosecution of the '043 patent. By refer-

encing the '212 and '531 patents, Cummins disclosed to the PTO the subject matter in the coin sorter displayed at the 1979 trade show. Thus, the 1979 showing was cumulative, not material, prior art. Moreover Cummins did not offer anything for sale at the 1982 De La Rue meeting. Brandt did not make even a threshold showing of materiality or intent to deceive with respect to the '043 patent.

The record also does not support Brandt's unclean hands defense. For the reasons stated, the unclean hands defense does not apply to this case. This court therefore denies Brandt's defenses of inequitable conduct and unclean hands.