**BAXTER INTERNATIONAL INC. and Baxter Healthcare Corp., Plaintiffs,**

v.

**McGAW, INC., Defendant.**

No. 95 C 2723.

United States District Court, N.D. Illinois, Eastern Division.

March 17, 1997.

Timothy J. Malloy, Gregory Joseph Vogler, Stephen F. Sherry, Sharon Ann Hwang,

Richard T. McCaulley, McAndrews, Held & Malloy, P.C., Chicago, IL, for Baxter Intern., Inc., Baxter Healthcare Corp.

Roderick G. Dorman, William J. O'Brien, John D. Carpenter, Christie Parker & Hale, Pasadena, CA, Marvin Alan Miller, Patrick Edward Cafferty, Miller, Faucher, Chertow, Cafferty & Wexler, Chicago, IL, for McGaw, Inc.

## MEMORANDUM OPINION AND ORDER

LINDBERG, District Judge.

Plaintiffs Baxter International and Baxter Healthcare International (Baxter) brought this patent infringement action against McGaw, Inc., (McGaw) asserting that McGaw's SafeLine needleless injection system infringed Baxter's U.S. patents 5,171,234 ('234 patent), 5,167,648 ('648 patent) and 5,158,554 ('554 patent). After a lengthy and contentious trial, the jury found that Baxter's patents were valid but that McGaw's products did not infringe any of the patents. In a written opinion, the court found that Baxter had committed inequitable conduct as to the '234 and '648 injection-site patents because the inventors intentionally withheld a piece of material prior art—the Borla PF0084 injection site—from the Patent and Trademark Office (PTO) during the application process.[1] Although McGaw had contended that the failure to disclose Baxter's own Nutrilock device to the PTO while prosecuting the '554 patent amounted to a separate occurrence of inequitable conduct, the court found that the Nutrilock device was cumulative of prior art that plaintiffs did disclose and that there was no evidence of intent to deceive the PTO. Therefore, it declined to find the '554 patent unenforceable.

McGaw now moves the court to amend the final judgment to find the '554 patent unenforceable due to inequitable conduct. It contends that the inequitable conduct the court found as to the '234 and '648 patents also applies to the '554 patent because the three patents were originally filed as one parent application. After the PTO issued a restriction requirement asserting that the parent application contained four distinct inventions, Baxter filed divisional applications that ultimately led to the three patents-in-suit. McGaw argues that the failure to disclose the Borla PF0084, as well as the inventors' conduct the court relied on to reach its finding of inequitable conduct, occurred while the parent and amended parent applications were pending, tainting it as well as any divisional application descending from it. In addition, McGaw claims that the three patents-in-suit are so closely related that inequitable conduct as to one would render the other two unenforceable.

■ Before the court can proceed to the merits of the motion, it must resolve the procedural issues Baxter has raised. First, Baxter claims that the motion, which McGaw termed a Motion to Supplement the Judgment, does not seek a clerical correction but rather requires the court to make new factual findings that were not raised below or included in the trial record.[2] As such, Baxter claims that the motion is inappropriate because the relief requested exceeds the scope of Rule 60, which is limited to corrections of clerical errors or oversight. *Harcon Barge Co. v. D & G Boat Rentals, Inc.*, 784 F.2d 665, 668 (5th Cir.1986). Baxter claims that the motion should instead be treated as a Rule 59(e) motion to alter or amend the judgment, but that even so such motions only serve to correct manifest errors of law or to present newly discovered evidence. *Keene Corp. v. International Fidelity Insurance Co.*, 561 F.Supp. 656, 665 (N.D.Ill.1982), *aff'd*, 736 F.2d 388 (7th Cir.1984). Because it alleges that McGaw is seeking new factual findings, Baxter asserts that relief is inap-

---

1. The court presumes familiarity with and will reiterate only when necessary the facts and holdings in its opinion on the issue of whether Baxter committed inequitable conduct in the prosecution of its '234, '554 and '648 patents. *Baxter International, Inc. v. McGaw, Inc.*, 1996 WL 145778 (N.D.Ill.).

2. The new findings Baxter identifies include: (1) the Borla PF0084 injection site was material to the parent application; (2) Baxter's withholding of the PF0084 with the intent to deceive occurred in connection with and during the prosecution of the claims of the parent application; and (3) the claimed inventions of the '234, '648 and '554 patents were a "single invention."

propriate under Rule 59 as well as under Rule 60.

McGaw responds that it has set forth at all appropriate times, including in the Final Pretrial Order and in its proposed findings of fact and contentions of law, the issue that the '554 patent is unenforceable based on the failure to disclose the PF0084 injection site in the parent application and on the close relationship among the three patents. McGaw also states that its motion is appropriately brought under either Rule 59 or Rule 60 and that supplementing the judgment is within the court's inherent powers. *Zimmern v. United States,* 298 U.S. 167, 169–70, 56 S.Ct. 706, 707, 80 L.Ed. 1118 (1936).

The court finds that MaGaw's motion to supplement the judgment is most accurately characterized as a Rule 52(b) motion. Under this rule, "the court may amend its findings—or make additional findings—and may amend the judgment accordingly." Fed. R.Civ.P. 52(b). "Counsel should not simply ignore that rule and head off to the appellate court to seek a remand for the making of those same findings." *Consolidated Aluminum Corp. v. Foseco International Ltd.,* 910 F.2d 804, 814 n. 9 (Fed.Cir.1990). Therefore, McGaw's motion for additional findings is indeed appropriate and the court will turn to its merits.[3]

 McGaw requests the court to make the following additional findings: that the Borla PF0084 injection site, which the court held was material to the '234 and '648 patents, was also material to the parent application, which included the claims that evolved into the '554 patent; that the failure to disclose the PF0084 occurred while the parent application was pending; that the '554 patent descended from the parent application; and that all patents descending from the parent application are tainted by the inequitable conduct the court found as to the '234 and '648 patents.

Baxter filed the original parent application on January 25, 1988, amending it in July of that year. Both the original and the amended application contained claims for the preslit-septum injection site and the inter-locking blunt cannula. Pursuant to the PTO's restriction requirement as to the original application, Baxter filed divisional applications in July 1990, abandoning the parent application and ultimately receiving the '234, '554 and '648 patents. The specifications and drawings of all three divisional patents describe the injection site and the blunt cannula as parts of a single system. The Borla PF0084 features in the '234 and '648 patents were included in the original and amended parent applications. The issued claims of the '554 patent were originally included in the amended parent application. A divisional application receives the benefit of the original application's filing date. 35 U.S.C. § 121.

McGaw points out that the failure to disclose the PF0084 occurred before or during the pendency of the parent application and, therefore, the inequitable conduct tainted the parent application and all of the patents that evolved from it, including the divisional '554 patent. The behavior the court considered relevant to its finding that intent to deceive the PTO existed concerned (1) the knowledge of the inventors about highly material prior art during the research and development process and (2) inventor Jepson's visit to the Borla manufacturing facilities in Italy in August 1988. *See Baxter Healthcare,* 1996 WL 145778, *7–8.

"The law is well settled that a fraud in obtaining any claim renders the entire patent invalid." *East Chicago Machine Tool Corp. v. Stone Container Corp.,* 181 U.S.P.Q. 744, 748, 1974 WL 20280 (N.D.Ill.1974). *See also Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.,* 863 F.2d 867, 877, 9 U.S.P.Q.2d 1384, 1392 (Fed.Cir.1988). This finding of unenforceability as to claims that are not themselves obtained through inequitable conduct is termed "infectious unenforceability." Besides being applied to claims within a patent, it is also applied to patent applications, such as continuation, continuation-in-part or divisional applications, that are genealogically related to the original

---

3. The court finds that McGaw's statement in its final pretrial order, which it supported with case law, that Baxter's inequitable conduct as to any one of the patents renders the other two patents unenforceable raised the issue it now requests the court to consider.

application as to which inequitable conduct is found. *East Chicago,* 181 U.S.P.Q. at 748 (patents obtained from one continuation and two divisional applications rendered unenforceable because of inequitable conduct as to the original application). The descendant patents in that case were rendered unenforceable even though they did not contain the claims from the original application that had been obtained by fraud. *Id.* McGaw maintains that because the Borla PF0084 was material to the claims in the original application that became claims in the '234 and '648 patents, the original application and all of its claims were tainted by inequitable conduct. Therefore, the divisional applications, which rely on the parent application, are also tainted by inequitable conduct because "the duty of candor extends throughout the patent's entire prosecution history." *Fox Industries, Inc. v. Structural Preservation Systems, Inc.,* 922 F.2d 801, 803 (Fed. Cir.1990). "A breach of the duty of candor early in the prosecution may render unenforceable all claims which eventually issue from the same or a related application." *Id.* at 804.

Baxter responds that the court cannot find inequitable conduct as to the parent application because the patent examiner did not examine on the merits the claims in the original application to which the PF0084 was relevant. To the contrary, it is quite clear that "the duty of candor extends throughout the patent's entire prosecution history." *Fox Industries,* 922 F.2d at 803. In *Fox Industries,* the court found that the patentee intentionally failed to disclose a highly material sales brochure that taught almost every feature specified in the patent. *Id.* The patentee argued that the inequitable conduct occurred in the early stages of prosecution (an original and three continuing applications were filed) and related only to claims that the PTO ultimately rejected. Therefore, it took the position that the inequitable conduct did not relate to the claims in the patent that did issue and could not render them unenforceable. *Id.* The court firmly rejected this contention, stating that the brochure was material to the patent claims that did issue, making the entire patent unenforceable. "(The attorney) had an obligation to disclose

the brochure to the PTO notwithstanding the fact that none of the claims issued in the form in which he drafted them." *Id.* at 804. "A fortuitous rejection does not cure a breach of the duty of candor." *Id.*

As McGaw points out, this was not the first time the Federal Circuit held that determining if inequitable conduct occurred does not depend on whether the patent examiner relied on the fraud when examining the application. *See Driscoll v. Cebalo,* 731 F.2d 878 (Fed.Cir.1984). "(A)n applicant who, with gross negligence, has withheld from the PTO prior art material to a claim in a parent application should not be exculpated simply because, by fortuitous circumstances, the PTO has not reached the stage of allowing claims in a continuing application." *Id.* at 885. In the instant case, the PF0084 was material to claims in the original application that eventually issued in the '234 and '648 patents. The withholding of the PF0084 constituted inequitable conduct as to the original application, regardless of whether the PTO examined any of those claims on their merits. *Id.* Because inequitable conduct occurred during the pendency of the original application, all of its claims—examined or not—carry that taint. *Kingsdown,* 863 F.2d at 877.

Baxter makes a second attempt to isolate the '554 patent from the rest of the original application. It claims that even if the PF0084 was material to the original application, it was not material to the claims in that application that became the '554 patent. Therefore, Baxter argues, inequitable conduct did not occur as to those claims. This attempt to segregate claims within a patent flies in the face of case law holding that inequitable conduct as to one claim in a patent renders the entire patent unenforceable. *Id.* If the inequitable conduct occurred during the pendency of the original and amended applications, and had that application not been split into separate divisional applications, all claims in the resultant patent would have been tainted regardless of whether the withheld prior art was material to each claim. *Id.* Baxter cannot avoid the results of its inequitable conduct as to the original application simply because that ap-

plication was subsequently split into divisional applications. "When, as in this case, several patents stem from an original application which contained fraudulent claims ultimately allowed, the doctrine of unclean hands bars enforcement of any of the claims of any of the patents." *East Chicago*, 181 U.S.P.Q. at 748.

■ Next, Baxter states that its withholding the Borla PF0084 was not an unconscionable act, which it asserts the court must find before it can render the '554 patent unenforceable. It claims that rendering patents unenforceable when they are merely related to another patent found unenforceable for inequitable conduct is appropriate only when a patentee commits egregious conduct such as bribery, perjury or deliberate disclosure of a fictitious best mode. *See Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 54 S.Ct. 146, 78 L.Ed. 293 (1933); *Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381 (1945); *Consolidated Aluminum Corp. v. Foseco International, Ltd.*, 910 F.2d 804 (Fed.Cir.1990). Baxter claims that its failure to disclose the PF0084 to the PTO stands in "stark contrast" to the unconscionable acts committed in these cases. It maintains that because the jury found that the Borla PF0084 injection site did not anticipate the '234 or '648 patents' claims, the nondisclosure was not egregious enough to warrant invalidating the '554 patent on the basis of unclean hands.

Courts have used the term "unconscionable" in connection with the "unclean hands" doctrine, which the Supreme Court first applied to find related patents unenforceable in *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 54 S.Ct. 146, 78 L.Ed. 293 (1933). The patentee in *Keystone Driller* had concealed a prior use that would have invalidated one of the patents-in-suit and, during litigation, had conspired to suppress that evidence from the trial court. Because this constituted unconscionable conduct before a court during judicial proceedings, the court declared all five of the patents-in-suit unenforceable despite the fact that the prior use related only to one of the patents. While

the court required an "immediate and necessary relation" between the unconscionable conduct and the patents before it would declare the patents unenforceable, the court found that their interrelatedness met this standard. *Id.* at 245–46, 54 S.Ct. at 147–48. One of the patents was basic and the remaining four were improvement patents on the original. The devices were "important, if not essential, parts of the same machine." *Id.*

Although the Federal Circuit has used the terms "inequitable conduct" and "unclean hands" interchangeably, commentators have asserted that the terms actually refer to two distinct doctrines. Kevin R. Casey, *"Infectious Unenforceability": The Extent or Reach of Inequitable Conduct on Associated Patents*, 17 AIPLQJ 338, 339 (1989). An important difference Casey cites between the unclean hands and inequitable conduct doctrines is that inequitable conduct refers to behavior during the prosecution of the patent application before the PTO and unclean hands refers to behavior that occurs during litigation or before a court. Other noted differences include: unclean hands requires an unconscionable act while inequitable conduct covers a broader range of fraudulent activity; and inequitable conduct only renders genealogically related patents unenforceable while unclean hands will render all patents-in-suit unenforceable even if they have been acquired through different applications or have different inventors. *Id.* at 342.

The Federal Circuit addressed the "equitable maxim 'he who comes into equity must come with clean hands' for the first time," in *Consolidated Aluminum*, 910 F.2d 804. While doing so, it conflated the two abovementioned doctrines when it stated that what it had been referring to as " 'inequitable conduct' was no more than the unclean hands doctrine applied to particular conduct before the PTO." *Consolidated* at 812. When reviewing the cases where related patents were rendered unenforceable, the Federal Circuit did not distinguish between behavior that constituted unclean hands and that which constituted inequitable conduct. Instead, it identified a two-factor test for finding related patents unenforceable: (1) inequitable conduct or unconscionability exists and (2) the

conduct had a "direct relation" to the requested relief. *Id.* at 810 (citing *Keystone Driller*). When applying this test to the facts before it, the court used the terms "inequitable conduct" and "unclean hands" interchangeably. *Id.* at 812. It also specifically rejected the patentee's argument that the Supreme Court's previous holdings had applied only to fraud before a court and not to fraud during the prosecution of the patent. *Id.* at 812. The court found inequitable conduct—which does not require an unconscionable act but merely an intent to deceive the PTO. This was sufficient for the court to hold all of the patents unenforceable because the conduct at issue had a direct relationship to those patents. *Id.* The court noted that the prosecution histories of the patents-in-suit were intertwined and that two of the patents were continuations-in-part of the third patent. *Id.* Therefore, Baxter's argument that infectious unenforceability between related patents can only be the result of unconscionability and not inequitable conduct cannot stand in light of the Federal Circuit's interchangeable use of the terms and its holding in *Consolidated Aluminum* that inequitable conduct rendered genealogically related patents unenforceable.

Baxter states that courts are still requiring unconscionable conduct before they will render related patents unenforceable. *Ristvedt–Johnson, Inc. v. Brandt, Inc.,* 805 F.Supp. 549 (N.D.Ill.1992). In that case, the court stated that "garden-variety" inequitable conduct does not invalidate other patents-in-suit. *Id.* at 556. Although it cited *Consolidated Aluminum* as support for its contention that unconscionability is required before related patents can be declared unenforceable, the *Ristvedt–Johnson* court applied *Consolidated Aluminum's* holding in a more narrow fashion that this court finds appropriate here. In *Ristvedt–Johnson,* the patents were not part of a group of related products and were not branches or descendants of one original application. Rather, the case involved a number of patents that were all prosecuted independently and were not integral parts of a system but simply different machines of a similar type. Although Baxter asserts that courts continue to apply the holding in *Consolidated* only to unconscionable acts, an examination of the cases it cites indicates instead that these courts have found divisional and continuation patents unenforceable without applying a standard of unconscionability. *Jack Frost Laboratories, Inc. v. Physicians & Nurses Manufacturing Corporation,* 901 F.Supp. 718, 729 (S.D.N.Y.1995) (second patent, which was continuation of patent that court found unenforceable for inequitable conduct, also rendered unenforceable); *Molins PLC v. Textron, Inc.,* 821 F.Supp. 1551, 1581 (D.Del.1992), *aff'd in part, vacated in part and remanded,* 48 F.3d 1172 (Fed.Cir.1995). Perhaps the Federal Circuit will create a shifting standard, where inequitable conduct is sufficient to render genealogically related patents unenforceable while unconscionable behavior is required to render related patents-in-suit unenforceable. It is unnecessary for the court to make such a prediction or determination here, where it finds that the inequitable conduct as to a parent application taints the divisional applications that descend therefrom.

Finally, Baxter assails the finding of relatedness in this case, asserting that although the court found the Borla PF0084 material to the '234 and '648 patents, it reached the opposite conclusion as to the '554 patent. It claims that the inequitable conduct at issue therefore does not have the "immediate and necessary relation" to the '554 patent to find it unenforceable. *Consolidated,* 910 F.2d at 810. Baxter has confused the "materiality" prong under the inequitable conduct test with "relatedness" under the infectious unenforceability test. More than "mere relatedness of subject matter" exists in this case, as the above recitation indicates. First and most important, the patents are genealogically related—descendants of the original application to which the court has found inequitable conduct occurred. *East Chicago,* 181 U.S.P.Q. 744. The three patents shared the same inventors, are parts of an interlocking system, have been licensed together, and were all asserted together in this litigation. *Mathis v. Hydro Air Industries, Inc.,* 1 U.S.P.Q.2d 1513, 1529, 1986 WL 84360 (C.D.Cal.1986), aff'd, 818 F.2d 874 (Fed.Cir.) (unpublished), cert. denied, 484 U.S. 826, 108

S.Ct. 92, 98 L.Ed.2d 53 (1987). Baxter's arguments to the contrary are wholly unpersuasive.

### Attorney Fees

■ McGaw has also filed a motion for attorneys' fees pursuant to 35 U.S.C. § 285, which states: "(t)he court in exceptional cases may award reasonable attorney fees to the prevailing party." Determining whether fees are warranted requires a two-step analysis. *J.P. Stevens Co., Inc. v. Lex Tex Ltd.,* 822 F.2d 1047, 1050 (Fed.Cir.1987). First, the prevailing party must show by clear and convincing evidence that the case is "exceptional." *Id.* If the court makes such a finding, it must them determine whether an award of fees is warranted. *National Presto Industries, Inc. v. West Bend Co.,* 76 F.3d 1185, 1197 (Fed.Cir.1996). Before awarding fees, the court must conclude that it would be a "gross injustice" not to do so. *J.P. Stevens Co.,* 822 F.2d at 1052 (citing legislative history).

■ McGaw's allegation that this case is exceptional under 35 U.S.C. § 285 has three bases: (1) Baxter committed inequitable conduct as to the three patents-in-suit; (2) Baxter's employees engaged in inequitable conduct during the litigation; and (3) Baxter's attorneys and experts engaged in misconduct during the litigation.

■ A finding of inequitable conduct does not automatically render a case exceptional. *Reactive Metals and Alloys Corp. v. ESM, Inc.,* 769 F.2d 1578, 1582 (Fed.Cir.1985). Such a finding, when combined with inappropriate trial conduct, may result in an exceptional case. *A.B. Chance Co. v. RTE Corp.,* 854 F.2d 1307, 1312 (Fed.Cir.1988). McGaw argues that the court's findings as to the implausibility of Baxter inventors' testimony, coupled with Baxter's attorneys' tactics during trial, make this case exceptional. It points to Baxter's assertion of a large number of claims during discovery, which were subsequently reduced at trial, as a dilatory tactic that substantially increased the cost of litigation. McGaw also asserts that Baxter intentionally used vexatious trial tactics, such as making inappropriate comments to the jury, mischaracterizing evidence and misstating the law.

■ The court finds that the instances McGaw cites do not support the finding that this is an exceptional case. Discretion in awarding fees permits the court to weigh tangible as well as intangible factors, including the closeness of the case. *National Presto,* 76 F.3d at 1197. Although the court found inequitable conduct for the failure to disclose the PF0084, the jury found all three patents valid. While the court found the inventors' trial testimony implausible when compared with the contemporaneous documentation of their research, it did not find that they willfully defrauded the court.

This case involved complex litigation that resulted in aggressive strategies by both parties, some of which this court admonished during trial. Nevertheless, the conduct of Baxter's counsel was not so egregious as to render the case exceptional. There is no evidence that Baxter's attorneys pursued frivolous theories or claims during discovery. *Bayer Aktiengesellschaft v. Duphar International Research,* 738 F.2d 1237, 1243 (Fed. Cir.1984) Together, these considerations convince the court that this is not an exceptional case that warrants the award of attorneys' fees.

ORDERED: McGaw's motion to supplement the judgment is granted. The court concludes that plaintiffs Baxter International and Baxter Healthcare committed inequitable conduct in the prosecution of their patents by not disclosing the Borla PF0084, and therefore U.S. Patents 5,171,234, 5,158,554, and 5,167,648 are rendered unenforceable. McGaw's motion for attorneys' fees is denied.