**ROHM AND HAAS COMPANY**

v.

**LONZA, INC. and SK Chemicals, Ltd.**

**Civil Action No. 96–CV–5732.**

United States District Court,
E.D. Pennsylvania.

Feb. 19, 1999.

510

Rudolf E. Hutz, N. Richard Powers, Gerald M. O'Rourke, Connolly, Bove, Lodge & Hutz, Wilmington, DE, Julie J.L. Cheng, Terence P. Strobaugh, Rohm and Haas Co., Philadelphia, PA, for plaintiff.

James G. Rosenberg, Ellen C.K. Giangiordano, Saul Ewing Remick & Saul, Philadelphia, PA, Michael J. Sweedler, Bert J. Lewen, Darby & Darby, P.C., New York City, for Lonza Inc.

Larry C. Jones, Bell, Seltzer, Park & Gibson, Charlotte, NC, William M. Atkinson, John P. Higgins, Alston & Bird, LLP, Charlotte, NC, Alan S. Nadel, Panitch Schwarze Jacobs & Nadel, Philadelphia, PA, for Sunkyong Industries, Ltd., SK Chemicals, Ltd.

## MEMORANDUM

LUDWIG, District Judge.

Defendants Lonza, Inc. and SK Chemicals, Ltd. move for reconsideration of order dated December 18, 1998. That order, which was entered under Fed.R.Civ.P. 52—as though it were a trial adjudication—will be vacated by an order entered contemporaneously with this memorandum. The substantive issue remains the same. It concerns the allegations by defendants of inequitable conduct on plaintiff's part in obtaining the patent in question. The correct procedural prism, as pointed out in defendants' reconsideration motion, is plaintiff's motion for partial summary judgment under Fed.R.Civ.P. 56.[1] For the reasons that follow, plaintiff's

---

1. The Federal Circuit has admonished caution before granting summary judgment as to a defense of inequitable conduct. "[T]he intent element of fraud or inequitable conduct ... requires the fact finder to evaluate all the facts and circumstances in each case. Such an evaluation is rarely enabled in summary proceedings." *Paragon Podiatry v. KLM Labs. Inc.*, 984 F.2d 1182, 1190 (Fed.Cir.1993). Nevertheless, "a motion for summary judgment may be granted when, drawing all reasonable factual inferences in favor of the non-movant, the evidence is such that the non-movant cannot prevail." *ATD v. Lydall, Inc.*, 159 F.3d 534, 547 (Fed.Cir.1998) (citation omitted) (affirming summary judgment of no inequitable conduct). Here, summary judgment is appropriate because only the threshold issue of materiality is decided, which is a question of law. Much of this memorandum repeats verbatim the analysis set forth in the memorandum that accompanied the December 11, 1998 order. *See Rohm & Haas Co. v. Lonza, Inc.*, No. 96–CV–5732, 1998 WL 876916 (E.D.Pa. Dec. 11, 1998)

motion for partial summary judgment will be granted.

In 1994, plaintiff Rohm and Haas Company was issued U.S. Patent No. 5,312,827 ('827 patent) for the formulation of a soluble pesticide. In a previous order and memorandum, defendants Lonza, Inc. and SK Chemicals, Ltd. were found to have literally infringed the '827 patent. *Rohm & Haas Co. v. Lonza, Inc.*, No. 96–CV–5732, 1998 WL 964213 (E.D.Pa. Nov. 2, 1998). The present issue, raised as an affirmative defense in defendants' counterclaims, is whether plaintiff engaged in inequitable conduct before the U.S. Patent and Trade Office (PTO) in its '827 patent application.

■ The Court of Appeals for the Federal Circuit has considered the doctrine of inequitable conduct as relates to the patent application process:

> Inequitable conduct consists of an affirmative misrepresentation of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive. One alleging inequitable conduct must prove the threshold elements of materiality and intent by clear and convincing evidence. The district court must then weigh the threshold findings of materiality and intent in light of all the circumstances to determine whether the equities warrant a conclusion that inequitable conduct occurred.

*B.F. Goodrich Co. v. Aircraft Braking Sys. Corp.*, 72 F.3d 1577, 1584 (Fed.Cir.1996) (quotation and citations omitted); *see also Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed.Cir.1995) ("The withholding of information must meet thresholds of both materiality and intent."). "A reference is deemed material if there is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent." *Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1327 (Fed.Cir.1998).

■ Where the subject matter of conduct in question concerns references to prior art, some latitude for advocacy is permitted. An applicant may attempt to distinguish its claims, and the examiner is free to agree or disagree with those arguments. *See Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1581 (Fed.Cir.1997) (where the examiner had access to a similar German patent, exaggerating differences between patent-in-suit did "not rise to the level of gross falsification"); *Akzo N.V. v. U.S. International Trade Commission*, 808 F.2d 1471, 1482 (Fed.Cir.1986) ("The mere fact that DuPont attempted to distinguish the ... process from the prior art does not constitute a material omission or misrepresentation."). Nevertheless, a patent applicant may not materially misrepresent prior art. *See, e.g., Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.*, 4 F.Supp.2d 477, 493–96 (E.D.Va.1998) (inequitable conduct occurred in submission of incomplete translation of another patent application and concealment of the importance of a patent reference).

Here, the most egregious instance of inequitable conduct charged against plaintiff is the alleged mischaracterization of the '430 patent in the prosecution leading to the '827 patent. Defendants contend that the '858, '158, '438, and '827 applications also contained intentionally deceptive material misrepresentations and omissions.

Having concluded that plaintiff did not make any material misrepresentations to the PTO, the question of plaintiff's intent will not be reached.

*Misrepresentation of the '430 Patent*

■ U.S. Patent No. 3,849,430 ('430 patent) was one of the first in a line of patents leading to the '827 patent. According to defendants, Rohm & Haas repeatedly withheld from the examiner that the '430 patent discloses 5–CMI[2] substantially free

---

**2.** 5–CMI is the abbreviation for 5–chloro–2– methyl–3–isothiazolone.

of nitrosamine precursors.[3] That withholding, together with statements to the contrary to the PTO, assertedly constituted willful material misrepresentations. However, defendants' basic premise stems from their mischaracterization of the '430 patent—specifically, that the patent discloses a 5–CMI compound invariably free of nitrosamine precursors.

5–CMI is produced in two successive steps: amidation and cyclization. Tseng decl., ¶ 6.[4] Example eight of the '827 patent sets forth both. *Id.* In the amidation stage, methyl mercaptopropionate (MMP) reacts with methylamine to become a compound—N-methyl-β-mercaptopropionamide (MMPA). *Id.* ¶ 7. In the cyclization stage, this compound is reacted with chlorine to produce a 5–CMI that is substantially free of nitrosamine precursors. *Id.* ¶¶ 5, 8, 9.

In contrast, example fourteen of the '430 patent reveals only the cyclization step for making 5–CMI. *Id.* ¶ 12. MMPA is reacted with chlorine to produce 5–CMI. There is no requirement—or any suggestion—that the MMPA must be, or is, free from nitrosamine precursors.[5]

The "Background of the Invention" section of the '430 patent states that mercapto-amides—the product of the amidation stage—can be prepared "in several ways" and prescribes a preferred method. *See* '430 patent, column 3, lines 48–60. Under the "preferred method, a betamercaptopropionic acid . . . is reacted with an alcohol to form beta-mercaptopropionate ester, which is then treated with ammonia or substituted ammonia derivatives to form the mercapto-amide." *Id.* According to defendants' two experts, MMPA produced

under this method is substantially free of nitrosamine precursors and uses methylamine as the substituted ammonia derivative.[6] Taylor decl., ¶¶ 8, 9; Tseng decl., ¶¶ 17, 18.

Even if defendants' view were accepted—that the '430 patent's "preferred method" for amidation corresponds to example eight of the '827 patent—that would not end the matter. The clear import of the '430 patent is that MMPA may be produced by "several" means other than the preferred method. There was no testimony by defendants' experts or any reason to believe that a chemist following example fourteen of the '430 patent would always use the preferred amidation method. Instead, example fourteen permits the use of MMPA with nitrosamine precursors and, therefore, would not necessarily produce nitrosamine precursor free 5–CMI.

Despite the various amidation routes permitted by the '430 patent, defendants rely solely on the amidation method contained in example eight of the '827 patent. This approach violates the sensible principle against hindsight reasoning:

> To imbue one of ordinary in the art with knowledge of the invention in suit, when no prior art reference or references of record convey or suggest that knowledge, is to fall victim to the insidious effect of a hindsight syndrome wherein that which only the inventor taught is used against its teacher.

*W.L. Gore & Assocs., Inc. v. Garlock, Inc.,* 721 F.2d 1540, 1553 (Fed.Cir.1983); *see also Sensonics, Inc. v. Aerosonic Corp.,* 81 F.3d 1566, 1570 (Fed.Cir.1996) ("To draw on hindsight knowledge of the patented

**3.** Defendants apparently abandoned their position that plaintiff deliberately withheld the '430 patent in toto.

**4.** Dr. Chuen–Ing Tseng, defendants' expert, provided two declarations: one with regard to infringement and one as to inequitable conduct. Citations in this memorandum refer to her inequitable conduct declaration.

**5.** There is no mention in the '430 patent of nitrosamine.

**6.** Citing Dr. Ethan S. Simon's deposition, plaintiff disputes that MMPA produced by the "preferred method" would always be substantially free of nitrosamine precursors. Nevertheless, for this motion, the testimony of Drs. Tseng and Taylor to that effect will be accepted.

invention, when the prior art does not contain or suggest that knowledge, is to use the invention as a template for its own reconstruction—an illogical and inappropriate process...."); *Grain Processing Corp. v. American Maize–Prods. Co.,* 840 F.2d 902, 907 (Fed.Cir.1988) ("Care must be taken to avoid hindsight reconstruction by using the patent in suit as a guide through the maze of prior art references, combining the right references in the right way so as to achieve the result of the claims in suit.").

The '430 patent does not require nitrosamine precursor-free MMPA. Consequently, there is no inherent reason to suppose that replicating example fourteen of the '430 patent would necessarily produce 5–CMI compounds free of nitrosamine precursors. *See In re Rijckaert,* 9 F.3d 1531, 1534 (Fed.Cir.1993) ("The mere fact that a certain thing may result from a given set of circumstances is not sufficient [to establish inherency]." (alteration in original) (quoting *In re Oelrich,* 666 F.2d 578, 581–82 (C.C.P.A.1981))). As a result, defendants' claim that plaintiff repeatedly did not explain that the '430 patent discloses substantially nitrosamine precursor-free 5–CMI must be rejected because of its unfounded chemical premise.[7]

### *Misrepresentations in the '858 Application*

The '827 patent originated from abandoned application Serial No. 383,858 ('858 application). Defendants urge that plaintiff incorrectly cited the '430 patent in the '858 appeal by reason of the assertion that the '430 patent corresponded to Lewis French Patent 1,555,415 (French '415 patent). Defs.' ex. F at 9.

While true, the French '415 patent and the '430 patent do not disclose identical information, this disparity cannot be said to be material to the present issue. The examiner rejected the '858 application in part because of the French '415 patent, not the '430 patent. Defs.' ex. E. at 2. Plaintiff provided the Board of Interferences and Patent Appeals with the English-language '430 patent, which contained all of the information in the French-language '415 patent. That the '430 patent contained additional information is, for the purpose of the present motion, of meager importance.[8] Also, it is evident that the '827 examiner was aware of the '430 patent. *See* '827 patent, column 5, lines 35–39 (referring to the '430 patent).

According to defendants, plaintiff also "distinguished the Virgilio reference [another patent referred to solely by name] by arguing that it does not show the reaction of 'a mercapto amide intermediate with a halogenating agent.'" Defs.' br. at 11. That is contrary to the examination record. The examiner was specifically advised that "Lewis et al '430 also taught the 'mercapto-amide' process ... which comprises halogenating N-methyl-β-mercapto-propionamide." Defs.' ex. C at 87.

Defendants insist, further, that plaintiff was duty-bound to disclose that example fourteen of the '430 patent does not use a

7. In their motion for reconsideration, defendants assert that this conclusion is tantamount to holding that the '430 patent is not material. Defs.' mot. recons. at 11–15. Such a result would deprive defendants' right to a jury trial on their invalidity defense, which hinges on the materiality of '430 patent. *Id.* Contrary to defendants' assertions, this decision does not extend to the materiality of the '430 patent and does not abrogate their right to a jury trial on the invalidity claim. There is no common issue between defendants' inequitable conduct and invalidity claims. *See Gardco Mfg., Inc. v. Herst Lighting Co.,* 820 F.2d 1209, 1212–13 (Fed.Cir.

1987) (right to jury trial implicated where defense of invalidity presents common issues with defense of inequitable conduct). The first concerns the materiality of the alleged misrepresentations to the PTO regarding the '430 patent; the second concerns whether the '827 patent was obvious over previous patents.

8. At most, the additional information contained in the '430 patent could have formed the basis for a rejection. If so, the only party conceivably prejudiced would have been plaintiff as applicant.

carbamoyl group containing compounds. The argument is that plaintiff distinguished the French '415 patent because of its use of a carbamoyl group.[9]

Plaintiff had no duty to anticipate or respond to rejections before they were made by the PTO. The '430 patent was before the PTO, and no effort was made by plaintiff to materially misrepresent or distort it. Defendants' position would require patent applicants to proffer unnecessary information not only to a patent examiner, but also to a future adversary in litigation.

### Misrepresentations in the '158 Application

Serial No. 500,158 ('158 application) was the grandparent of the '827 patent. According to defendants, plaintiff misled the '158 examiner by (1) representing that the '430 patent example fourteen always disclosed nitrosamine precursors and (2) misrepresenting the method of producing MMPA set forth in the '430 patent.

Defendants' perspective skews the '158 application and the '430 patent. As noted, 5–CMI produced in accordance with example fourteen of the '430 patent may or may not be nitrosamine precursor-free. Plaintiff stated as much in the '158 application: "[A] second big question is whether or not said artisan would have obtained nitrosamine-free products even if he/she had so chosen the mercapto-amide route." [10] Defs.' ex. C at 88.

In the '158 application, plaintiff's explication was that a person skilled in the art that amidated MMP to make MMPA would "most likely" have used a method referenced by Nyitrai.[11] Id. at 89. Defendants maintain that this statement misrepresented the standard method of producing 5–CMI, which is the method disclosed in the '430 patent, as read in light of the '827 patent.

As previously discussed, reading portions of the '827 patent into the '430 patent would contradict the rule against hindsight. Plaintiff was free to argue for a method of producing MMPA different from the methods in the '827 patent or the preferred method of the '430 patent. Defendants have offered no evidence that the Nyitrai method was invalid or uncommon or that the examiner did not have a copy of the '430 patent. Accordingly, there has been no threshold showing of a material misrepresentation with regard to the '158 application.

### Misrepresentations in the '438 Patent

The immediate parent of the '827 patent was Serial No. 07/728,438 ('438 application). There, plaintiff stated that Virgilio did not show a method of making or an example of 5–CMI. Defs.' ex. K at 6–8. Defendants argue that plaintiff thereby falsely implied that no other reference disclosed a process for making 5–CMI.

However, plaintiff had no obligation to respond to a rejection not made or an issue not raised by the examiner, especially where the '430 patent was part of the application.[12] Pl.'s ex. 2. In some instances an omission may be material—such as where an applicant professes to reference all pertinent patents but leaves out a significant one. Here, the purported "misrepresentation" occurred in the middle of a discussion of the Virgilio patent—hardly a place to expect a summary of 5–CMI patents.

Defendants make much of plaintiff's statements contained in two requests for reconsideration—that the claims in

---

9. Defendants cite no authority for this proposition.

10. The mercapto-amide method was the preferred amidation process recited in the background section of the '430 patent.

11. See Nyitrai et al., *Tetrahedron Letters,* vol. 34, at 1034.

12. Defendants' contentions in regard to the Serial No. 07/970,971 application are rejected for the same reasons.

the '438 application were different from claims previously rejected in the '858 application.[13] As defendants point out, claim twenty-eight of the '858 application is similar to claim one of the '827 patent. However, this similarity was disclosed by plaintiff in a footnote.[14] Furthermore, the examiner stated that she had reviewed the '858 application. *Id.* at 104; *see also Kingsdown Medical Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 874 n. 8 (Fed. Cir.1988) (examiners have a "duty to examine the claims in a continuation" and may rely on counsel's candor "only when the examiner does not have the involved documents or information before him").

### Certificate of Correction

■ After prosecution on the merits of '827 patent was closed, plaintiff filed an amendment under 37 C.F.R. § 1.312 to change one of the terms in the first claim. The examiner declined to make the change because "correction would have required more than a cursory review of the record." Pl.'s br. at 11; Defs.' br. at 17. Plaintiff later obtained a certificate of correction that changed the term "ppm" to "parts."[15] The request for the certificate of correction did not state that the examiner had refused to enter a Rule 312 correction. Pl.'s ex. 8 at 3.

Given the '827 patent and its background, the Rule 312 proceeding was not material to a certificate of correction. First, the examiner's refusal to enter the Rule 312 amendment was a part of the '827 prosecution history. *See* 37 C.F.R. § 1.56(b) ("Under this section, information is material to patentability when it is not cumulative to information already of record."). Second, the PTO determined that the amendment would not "materially affect the scope or meaning of the claims." Pl.'s ex. 8 at 6. The change was found to be merely clerical.[16] Third, knowledge that the examiner rejected the wording change would have had little, if any, bearing on the decision to grant the certificate of correction. Rule 312 corrections are governed by a different procedural and substantive standard from certificates of correction. *Compare* 37 C.F.R. § 1.323 (standard for certificate of correction for typographical errors) *with* Patent and Trademark Office, U.S. Department of Commerce, *Manual of Patent Examining Procedure* § 714.16 (standard for Rule 312 amendment).

Accordingly, plaintiff's motion for partial summary judgment will be granted.

### ORDER

AND NOW, this 19th day of February, 1999, the motion of defendants Lonza, Inc. and SK Chemicals, Ltd. for reconsideration is granted in part and denied in part as follows:

1. The memorandum and order of December 11, 1998 are vacated.

2. The motion of plaintiff Rohm and Haas Company for partial summary judg-

13. In the June 11, 1992 Amendment, plaintiff remarked that "the claims are different than the claim which the Board of Appeals decision of May 30, 1989 in the great grandparent application focused upon." Defs.' ex. I at 4. The August 20, 1992 request for reconsideration read: "The present claims differ significantly from the claims which were held to be unpatentable over these same references by the Board in the great grandparent application." Defs.' ex. J at 4.

14. The footnote to the first passage in note 13, *supra*, explained: "Although dependent claims which contained the presently added limitations to claim 1 were before the Board, those claims were not separately argued or emphasized and so were not separately considered as to patentability." Defs.' ex. I at 4 n. 2.

15. Our *Markman* decision, which discussed the need for the correction, also substituted "parts" for "ppm." *See Rohm & Haas Co. v. Lonza, Inc.*, 997 F.Supp. 635, 642–43 (E.D.Pa. 1998).

16. Dr. Amos B. Smith, III, the court-appointed expert in this case, considered the term "ppm" a "typographical error." *Rohm & Haas Co. v. Lonza, Inc.*, 997 F.Supp. 635, 642 (E.D.Pa.1998).

ment on the issue of inequitable conduct against defendants Lonza, Inc. and SK Chemicals, Ltd. is granted.

3. By May 31, 1999 defendants will notify whether they intend to rely on the advice of counsel in defense of the wilfulness charge.

4. Next Rule 16 conference—February 23, 1999, at 4:30. A memorandum accompanies this order.