**EXXON CORPORATION, and Exxon Chemical Patents, Inc., Plaintiffs,**

**v.**

**PHILLIPS PETROLEUM, Defendant.**

**No. Civ.A. H–98–2592.**

United States District Court, S.D. Texas, Houston Division.

Nov. 30, 1999.

William Charles Slusser, Slusser & Frost, Houston, TX, Louis S. Sorell, Brumbaugh Graves Donohue and Raymond, New York, NY, Kenneth M. Bialo, Rachel G. Atkin, Matthew K. McCoy, Baker & Botts, New York, NY, Marta E. Delsignore, Baker & Botts, New York, NY, for Exxon Corp., Exxon Chemical Patents Inc., Plaintiffs.

Phillip Wayne Fisher, Fisher Boyd Brown Boudreaux, et al., Houston, TX, for Phillips Petroleum Co.

### ORDER

GILMORE, District Judge.

Pending before the Court are Defendant's and Plaintiffs' Motions for Summary Judgment (Instrument Nos. 34 and 41). Based on the information provided to the Court, it is the finding of this Court that the Defendant's motion should be **GRANTED** and Plaintiffs' motion should be **DENIED.**

### I.

Plaintiffs Exxon Corporation and Exxon Chemical Patents, Inc. (collectively, "Exx-on") bring this action against Defendant Phillips Petroleum Company ("Phillips"), alleging that Phillips infringed its patent in violation of 35 U.S.C. § 271.

Exxon owns U.S. Patent No. 5,324,800 ("the '800 patent"). The patent covers certain metallocene/alumoxane catalysts for making polymers, or plastics. All applicable maintenance fees have been paid for the patent.

The '800 patent claims priority to three earlier filed applications and an effective filing date of June 6, 1983, when the application was first filed. Exxon's European Patent Application containing the technical specifications of all four applications was published on December 27, 1984. Exxon filed its second application in the United States on April 29, 1985, and its third on December 22, 1989. Exxon filed the fourth application on August 30, 1991, having previously filed the required "37 C.F.R. § 160 Continuation or Divisional Filing Form." On the continuation form, an "X" was marked next to the statement "Cancel in this application original claims 1–11 of the prior application before calculating the filing fee." At that time, only claims 1–11 were pending, meaning that if Exxon canceled claims 1–11, it would have no claims pending with the Patent Office.

The Patent Office, pursuant to its internal policy, retained claim 1 of the fourth application and canceled claims 2–11. An official at the Patent Office crossed out the "11" and inserted "2–11." The form contains a marginal notation of "10/7/91" and the clerk's initials. Exxon received confirmation of this in a phone conversation with Patent Examiner Smith on or before January 23, 1992. Exxon's third application was abandoned as of April 8, 1992.

On June 29, 1992, Exxon filed an amendment, canceling claim 1 and adding claims 12–45. The '800 patent was issued on June 28, 1994.

Exxon alleges that Phillips has a polymerization plant in this district and that Phillips has publicly announced that it is

manufacturing and selling polymers made with metallocene and manufactures metallocene catalysts for use in this plant at a location in Oklahoma. Exxon contends that Phillips's making and use of metallocene catalysts, and its making using, selling and offering for sale these polymers made with metallocene catalysts infringes Exxon's patent.

Exxon further alleges that Phillips has induced Phillips' catalyst suppliers, including Grace Davison (W.R. Grace) and Albemarle, and possibly its licensees, to infringe Exxon's patent by providing research, manufacturing instructions, and handling information regarding its patented catalyst. Exxon contends that Phillips provided the information to its suppliers with the intent to encourage the suppliers to make, sell and offer to sell Exxon's patented catalyst by, placing orders and purchasing the catalyst.

Exxon alleges that Phillips contributorily infringed its patent by selling a component of the metallocene catalyst to Grace Davison (W.R. Grace) and Albemarle, and possibly also Phillips' licensees. Exxon claims that there is no commercial use for metallocene that is not infringing.

Exxon claims that it notified Phillips of its patent and of its complaints regarding infringement. Exxon alleges that Phillips continues to infringe on its patent.

On June 3, 1999, Phillips filed a motion for summary judgment, contending that it is entitled to judgment as a matter of law. Phillips contends that Exxon's patent is invalid in light of *Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321 (Fed.Cir. 1998). Phillips argues that Exxon's patent is not entitled to the June 6, 1983 filing date, and consequently, under 35 U.S.C. § 102(b) the patent is invalid because it was filed more than a year after its foreign publication. (Instrument Nos. 34 and 35).

On June 23, 1999, Exxon filed a cross-motion for summary judgment and response to Phillips' motion for summary judgment, contending that it is entitled to judgment as a matter of law. (Instrument No. 41). Exxon asserts that *Baxter* does not apply, its patent is valid, and Phillips' use of the patented catalysts constitutes infringement. Specifically, Exxon claims that it paid a filing fee and it always had one claim pending, unlike *Baxter*. Exxon also contends that even if the Court finds that the Patent Office should have canceled claim 1, Exxon had a claim pending by October 7, 1991, when the Patent Office amended its application. Exxon argues that as a result, it is entitled to the June 6, 1983 filing date. Lastly, Exxon claims that Phillips is asking the Court to apply Patent Office regulation retroactively by pointing to the Patent Office's adoption of *Baxter* as support for its arguments.

On July 13, 1999, Phillips filed a response to Exxon's cross-motion for summary judgment and reply to Exxon's response to Phillips' motion for summary judgment. (Instrument No. 48). First, Phillips argues that this case cannot be distinguished from *Baxter* because the court in that case held that the Patent Office cannot revive claims that the applicant canceled. In addition, it argues that Exxon's payment of a filing fee, in contrast to *Baxter*, where the filing fee was not paid is not material. Exxon did not add a claim prior to abandoning its third application, which breaks the co-pendency chain. Phillips argues that the break in co-pendency means that the filing date is June 29, 1992, the date that Exxon filed claims 12–45. Next, Phillips claims that Exxon's third application was abandoned as a matter of law on November 1, 1991, prior to any conversation with the Patent Office that occurred on or before January 23, 1992. Further, Exxon was required to reduce all claims to writing and make them part of the official record. Finally, Phillips contends that it is not asking the Court to retroactively apply a regulation.

On August 4, 1999, Exxon filed a reply, arguing that Phillips had construed the holding in *Baxter* too broadly to mean that the Patent Office was stripped of nearly all

discretion (Instrument No. 45). Exxon contends that *Baxter* is distinguishable on its facts from this case. Specifically, in *Baxter*, neither the Patent Office nor Baxter regarded the canceled claims as being part of the application. Baxter requested that the claims be canceled, the Patent Office canceled them, and Baxter never paid a filing fee. Baxter, in an effort to salvage co-pendency after the cancellation had destroyed it, argued that because the Patent Office's customary procedure was to deny entry of amendments which canceled all claims in an application, that its cancellation of all claims was not legally effective. Here, both the Patent Office and Exxon regarded claim 1 as having been part of the '800 application, which maintained co-pendency. In *Baxter*, the Patent Office made an unauthorized alteration to Baxter's application by undoing the cancellation at Baxter's request. Exxon claims that there was no such unauthorized action here. Exxon also contends that its reliance on its conversation with Patent Examiner Smith is proper because it was reduced to writing and it did not constitute an oral promise, stipulation, or understanding in relation to an issue about which there is doubt.

On August 23, 1999, Phillips filed a sur-reply, arguing that Exxon misstated the facts when it claimed that there was not an application on file without claims and that Exxon's fourth application had a claim pending at all times. (Instrument No. 47). Phillips asserts that when Exxon filed its fourth application, it requested that the Patent Office cancel claims 1–11, which meant that Exxon filed an application without a claim, in violation of 35 U.S.C. § 112. The Patent Office's decision to keep claim 1 when Exxon had canceled it was a waiver of the statutory requirement that a patent application be submitted with a claim. Such waivers are unauthorized actions, Phillips argues, and were expressly prohibited by *Baxter*. Phillips also contends that Exxon is attempting to alter the patent prosecution history by retroactively establishing the existence of a pending

claim by relying on an oral communication from the Patent Office. Phillips argues that Exxon cannot rely on the June 29, 1992 Preliminary Amendment that memorializes the oral communication because the third application was abandoned before June 29, 1992, meaning that the communication was not memorialized during the pendency of the patent application chain. Phillips argues that Exxon's reliance on the Preliminary Amendment is also improper because the Amendment does not list the date that the communication took place and the communication describes unauthorized actions by the Patent Office insufficient to restore co-pendency.

## II.

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Anderson*, 106 S.Ct. at 2510. If the evidence rebutting the motion for summary judgment is only colorable, or not significantly probative, summary judgment should be granted. *Anderson*, 106 S.Ct. at 2511; *see Lewis v. Glendel Drilling Co.*, 898 F.2d 1083, 1088 (5th Cir.1990), *cert denied*, 502 U.S. 857, 112 S.Ct. 171, 116 L.Ed.2d 134 (1991). The summary judgment procedure, therefore, enables a party who "believes there is no genuine issue as to a specific fact essential to the other side's case to demand at least one sworn averment of that [specific] fact before the lengthy process of litigation continues." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888–889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

Under Fed.R.Civ.P. 56(c), the moving party bears the initial burden of informing the district court of the basis for its belief that there is an absence of genuine issue for trial and for identifying those portions of the record that demonstrates such absence. *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1355–1356, 89 L.Ed.2d 538 (1986); *Leonard v. Dixie Well Serv. & Supply, Inc.*, 828 F.2d 291, 294 (5th La.1987). Where the plaintiff is the moving party, the plaintiff bears the burden of proof in addition to the burden of demonstrating that no genuine issues of material fact exist. *See Anderson*, 106 S.Ct. at 2505 ("in ruling on a motion for summary judgment, the judge must view the evidence presented through the ____ of the substantive evidentiary burden.") In other words, the moving party must demonstrate not only that the facts are undisputed, but that the facts are sufficient to warrant the entry of judgment.

Where the moving party has met its Rule 56(c) burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts ... [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 106 S.Ct. at 1356 (*quoting* Fed.R.Civ.P. 56(e)) (emphasis in original); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Leonard*, 828 F.2d at 294. To sustain the burden, the nonmoving party must produce evidence admissible at trial. *Anderson*, 106 S.Ct. at 2514; *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir.1992) ("To avoid a summary judgment, the non-moving party must adduce admissible evidence which creates a fact issue ..."). The court views the facts in the light most favorable to the nonmovant and draws all reasonable inferences in favor of the non-movant. *Brothers v. Klevenhagen*, 28 F.3d 452, 455 (5th Cir.) The mere existence of a scintilla of evidence in support of the non-movant's position, however, will be insufficient; there must be evidence on which the jury could reasonably find for the non-movant. *Anderson*, 106 S.Ct. at 2512.

■ In the context of a patent case, the Court may grant a motion for summary judgment where "no reasonable jury could return a verdict for the non-moving party." *Wolverine World Wide, Inc. v. Nike Inc.*, 38 F.3d 1192, 1194 (Fed.Cir.1994) (quoting *Anderson*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202). Patents are presumed to be valid by statute, 35 U.S.C. § 282. *Georgia–Pacific Corp. v. United States Gypsum Co.*, 195 F.3d 1322, 1328–29 (Fed.Cir. 1999). In the case where a party seeks summary judgment on the basis of invalidity, the moving party has the burden of proving invalidity with facts supported by clear and convincing evidence. *Id.; Nat'l Presto Indus. v. West Bend Co.*, 76 F.3d 1185, 1189 (Fed.Cir.1996).

## III.

Phillips claims that Exxon broke the chain of pending patent applications and rendered its patent invalid. Without at least one claim pending at all times from the original filing date, Exxon cannot claim the June 6, 1983 filing date. 35 U.S.C. § 120. Phillips alleges that because Exxon had published its patent on December 27, 1984 and did not have a claim pending at all times, the patent is invalid since a patent cannot be granted if an application is filed more than a year after the technical information contained in the patent has been published. 35 U.S.C. § 102(b). If Exxon is only entitled to claim the later filing date of June 29, 1992, its patent is not valid because the information was published more than a year before the filing date. Phillips contends, therefore, that it is not liable for infringement of Exxon's patent.

Exxon asserts that it always had at least one claim pending with the Patent Office as required by 35 U.S.C. § 120, entitling it to claim the original June 6, 1983 filing date. Exxon contends that it received confirmation from the Patent Office that it

had retained claim 1 despite Exxon's instruction that it cancel all pending claims. Exxon argues that the Patent Office's action maintained co-pendency with the prior application. For that reason, Exxon contends that its patent is valid and that it is entitled to summary judgment in its favor.

██ Under 35 U.S.C. § 120, a later patent application will be given the effective filing date of an earlier application if it is filed before the patenting, abandonment, or termination of the proceedings on the first application. The two applications must be co-pendent and the later-filed application must reference the earlier-filed application. *See In re Costello,* 717 F.2d 1346, 1348 (Fed.Cir.1983).

Under 35 U.S.C. § 102(b), an applicant is not entitled to a patent if the invention is patented or described in a printed publication in a foreign country more than one year before the date of the patent application. Consequently, if Exxon broke the chain of patent applications when it canceled all its pending claims, making the effective filing date June 29, 1992, its patent is invalid based on the 1984 publication. However, if the Patent Office's policy of retaining a claim when all claims are canceled was proper, Exxon may claim the June 6, 1983 filing date, thereby making its patent valid.

In *Baxter Int'l, Inc. v. McGaw,* 149 F.3d 1321 (Fed.Cir.1998), Baxter filed an application containing claims numbered 1 through 59 on January 25, 1988. Baxter then filed a preliminary amendment canceling those claims and adding claims 60–120. Subsequently, Baxter amended claims 95 and 96, canceled claims 118–120 and added new claims 121–124. The patent office rejected the application. Baxter then mailed a request to file the divisional application which resulted in a patent. In its filing, Baxter requested that claims 1–59, 95–100, and 109–124 be formally canceled from the application, but only included a copy of the original application with claims 1–59. The Patent Office informed Baxter on June 26, 1990 that the application was incomplete because claims 60–124 were missing from the application and that the application could not be assigned a filing date. The letter informed Baxter that the filing date would be the date the Patent Office received the claims. As a matter of law, the application was abandoned on June 14, 1990, meaning that Baxter had broken the chain of pending applications as of that date.

Two days after receiving the letter, Baxter submitted the claims 60–124 that had been omitted from the divisional application. The Patent Office gave the application a filing date of July 16, 1990. Baxter petitioned the Patent Office to change the effective filing date, which it did. The latest application was given a filing date of June 11, 1990, re-establishing co-pendency with the previous application. Due to the discretionary actions of the Patent Office, Baxter was able to claim priority to the earlier application filed on January 25, 1988. Baxter had also filed an International Patent Application which was published on July 27, 1989. *Baxter,* 149 F.3d at 1326.

Baxter contended that its submission and cancellation of claims 1–59 satisfied the co-pendency requirements of 35 U.S.C. § 120 because there is no statutory requirement that the Patent Office ordinarily follow the request to cancel the claims. By its own internal policy, the Patent Office ordinarily denied entry of amendments to cancel all the claims in an application. Baxter argued that its request to cancel all the claims on its application could not be acted upon by the Patent Office following its usual procedure, and if such an action was taken, it would have no legal effect.

Baxter contended that its submission and cancellation of claims 1–59 satisfied the co-pendency requirements of 35 U.S.C. § 120 because there is no statutory requirement that the Patent Office ordinarily denied entry of amendments to cancel all the claims in an application. Baxter argued that its request to cancel all the

claims on its application could not be acted upon by the Patent Office following its usual procedure, and if such an action was taken, it would have no legal effect.

The court disagreed, finding that the request was not an amendment but an instruction sent along with the application, meaning that claims 1–59 were never part of the original application. The court found that by filing an application without claims, Baxter had not met the filing requirements set out in 35 U.S.C. § 112, that the application must "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." The court concluded that the Patent Office did not possess the discretion to suspend the statutory requirements of § 112 and § 120 and grant a filing date of January 25, 1988. The proper filing date would not have been until a separate application containing claims was filed on January 7, 1991. Because this application was filed more than one year after the foreign publication of the invention occurred, the patent was invalid.

■■■ Here, the Court is presented with a strikingly similar set of facts. When Exxon filed its fourth application on August 30, 1991, Exxon instructed the Patent Office to cancel claims 1–11. This instruction canceled all the pending claims. Under 35 U.S.C. § 112, an application cannot be filed without any claims pending. The Patent Office does not have the authority to waive a statutory requirement. *Baxter*, 149 F.3d at 1334 ("These [statutory] requirements may not be waived by the PTO"). While 37 C.F.R. § 1.183 provides that "[i]n an extraordinary situation, when justice requires, a requirement of the regulations in this part which is not a requirement of the statutes may be suspended or waived by the Commissioner ...", the provision specifically acknowledges that statutory requirements may not be waived. As a result, while the Patent Office may have been following its internal procedure by retaining claim 1 in violation

of Exxon's instructions, it was not statutorily permitted to do so. The fact that the Patent Office did not act as a result of the applicant's request as it did in *Baxter* is immaterial. Reviving claim 1 was tantamount to allowing an application to be filed without a pending claim in violation of a statutory requirement. The Patent Office did not have the discretion to grant Exxon such a waiver, thus the action is unauthorized. *Id.* Exxon cannot rely on an unauthorized action of the Patent Office. Consequently, Exxon lost co-pendency of its applications when it canceled its claims on August 30, 1991. It is only entitled to claim a filing date of June 29, 1992, when it filed additional claims. Because the filing date is more than one year after the publication of the technology in its European Patent Application, the patent is invalid. 35 U.S.C. § 102(b).

Exxon's argument that the October 7, 1991 action of the Patent Office is an amendment that preserved co-pendency of its applications is equally unavailing. According to *Baxter*, an application submitted without claims is not an application. *Baxter*, 149 F.3d at 1333. Without an application, it is impossible to have an amendment to that application. Likewise, any assurances from the Patent Office, whether verbal or commemorated in writing, whenever they occurred relative to the abandonment of the earlier application did not serve to maintain co-pendency. The Patent Office did not have the authority to revive a claim on a statutorily deficient application and could not have preserved co-pendency by retaining claim 1.

Exxon argues that Phillips's arguments are an impermissible collateral attack on a Patent Office decision that complied with the Patent Office's own rules. This argument ignores the fact that regardless of whether the decision was in conformity with the Patent Office procedure, it was a decision that the Patent Office did not have the power to make. As a result, the act is invalid.

Because the '800 patent is invalid, Exxon may not claim that Phillips is liable for its infringement under 35 U.S.C. § 271. *See Baxter,* 149 F.3d at 1333–1334.

## IV.

The Court finds that the co-pendency of Exxon's patent applications was broken when Exxon failed to file a complete application before the previous application was abandoned on April 8, 1992. Consequently, the '800 patent is entitled to a filing date of June 29, 1992. Because Exxon had published its patent in December 1984, the '800 patent is invalid. Phillips is not liable for infringing Exxon's patent. Phillips's Motion for Summary Judgment is **GRANTED.** Exxon's Motion for Summary Judgment is **DENIED.**