**EXXON CORPORATION (now Exxon Mobil Corporation) and Exxon Chemical Patents, Inc., Plaintiffs–Appellants,**

v.

**PHILLIPS PETROLEUM COMPANY, Defendant–Cross–Appellant.**

**Nos. 00–1173, 00–1174.**

United States Court of Appeals, Federal Circuit.

DECIDED: Sept. 20, 2001.

E. Edward Bruce, Covington & Burling, of Washington, DC, argued for plaintiffs-appellants. With him on the brief was Christopher N. Sipes.

S. Leslie Misrock, Pennie & Edmonds LLP, of New York, NY, argued for defendant-cross appellant. Of counsel on the brief were Stanton T. Lawrence III, Paul J. Zegger, and Carl P. Bretscher, Pennie & Edmonds LLP, of Washington, DC; and Roy W. Hardin, Locke Liddell & Sapp LLP, of Dallas, TX. Of counsel was Wayne Fisher, Fisher, Boyd, Brown, Boudreaux & Huguenard, L.L.P., of Houston, TX.

Before NEWMAN, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and LINN, Circuit Judge.

PAULINE NEWMAN, Circuit Judge.

Exxon Mobil Corporation and Exxon Chemical Patents (together "Exxon") appeal the judgment of invalidity of United States Patent No. 5,324,800 (the '800 patent) on the ground of anticipation.[1] Phillips Petroleum Company has filed a conditional cross appeal on the issue of interference estoppel. We reverse the judgment of invalidity, affirm the ruling on the cross appeal, and remand for further proceedings.

## I

In response to Exxon's suit for infringement of the '800 patent, Phillips asserted, *inter alia*, the defense of patent invalidity based on anticipation by a published foreign patent having the same text as the '800 patent. This publication is an invalidating reference under 35 U.S.C. § 102(b) if Exxon is not entitled to the benefit of earlier United States application filing dates because of an asserted break in the chain of copending continuing applications. The district court found that Exxon had indeed broken the chain of copendency, and entered final judgment of patent invalidity.

The chain of applications leading to the '800 patent is as follows: Exxon's initial application was filed in the United States on June 6, 1983. A continuation applica-

---

1. *Exxon Corp. v. Phillips Petroleum*, 81 F.Supp.2d 746 (S.D.Tex.1999).

tion was filed on April 29, 1985. Some of the subject matter of this application was involved in an interference proceeding, which was decided adversely to Exxon. A third application was filed on December 22, 1989. A fourth application was filed on August 30, 1991, and became the '800 patent. At issue is the continuity of pendency of this fourth application with the third application, which "went abandoned" on November 1, 1991.

The fourth application was filed in accordance with the procedures of 37 C.F.R. § 1.60 as then in effect. The prosecution record contains a form entitled "37 CFR 1.60 CONTINUATION OR DIVISIONAL FILING FORM" bearing the PTO date stamp August 30, 1991. It is marked as a "continuation" of Serial No. 455,484 filed on December 22, 1989, and as "enclos[ing] a copy of the prior application ... and the oath or declaration as originally filed." Attached was a copy of the Serial No. 455,484 specification including claims 1–11, and the declaration by the inventors.

In the section of the form marked "CLAIMS AS FILED, LESS ANY CLAIMS CANCELLED BY AMENDMENT BELOW" Exxon inserted "10" Total Claims including "3" Independent Claims. $630.00 was the fee for an application with no more than 20 total claims including no more than 3 independent claims. The form authorized charging $630.00 to Exxon's deposit account.

At the form's printed text: "Cancel in this application original claims —— of the prior application before calculating the filing fee" Exxon had typed "1–11" in the blank space. Since at least one claim was required for filing purposes, it was incorrect to instruct cancellation of claims 1–11. On a copy of the form in the PTO records, marked as Amendment "A," a line was drawn through the typed entry 1–11, and "2–11" was hand-written, initialed, and dated 10/7/91. A document captioned "Patent Application Fee Determination Record" contains the hand-written entry "one claim for filing purposes only."

The district court framed the issue as whether the PTO was legally permitted to retain a claim "for filing purposes," when the applicant erroneously instructed that all claims be cancelled. The court ruled that this PTO action was not within its administrative authority, stating that *Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321, 47 USPQ2d 1225 (Fed.Cir.1998) requires this result.

## A

A patent application must contain at least one claim in order to comply with 35 U.S.C. § 112 ("The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.") An implementing rule, 37 C.F.R. § 1.51(a),[2] provides that a complete application must include "(1) A specification, including a claim or claims...." 37 C.F.R. § 1.53(b) states that the applicant is entitled to a filing date as of "the date on which: (1) A specification containing a description pursuant to § 1.71 and at least one claim pursuant to § 1.75 ..." is filed.

The Manual of Patent Examining Procedure (MPEP) contains details of the practices and procedures whereby the PTO implements its statutory mission. Relevant to an applicant's instruction to cancel all claims, MPEP § 711.01 states that "an amendment cancelling all of the claims ... is regarded as non-responsive and should not be entered." MPEP § 714.19 states

---

2. All citations to 37 C.F.R. are to the July 1, 1991 edition. All citations to the MPEP are to the October 6, 1987 revision. These are the versions in effect as of the relevant events.

that "amendment cancelling all of the claims and presenting no substitute claim or claims" is among the "types of amendments [that] are ordinarily denied entry." MPEP § 714.20 states that while "the general rule prevails that an amendment should not be entered in part . . . the strict observance of its letter may sometimes work more harm than would result from its infraction. . . ." Thus the PTO did not enter the erroneous instruction cancelling claims 1–11, but preserved one claim "for filing purposes only." Phillips argues, and the district court held, that the PTO does not have discretion to take this action, citing *Baxter, supra.*

Exxon argues that this action to preserve one claim is within the PTO's administrative authority. Exxon states that no statute or regulation was violated by the PTO's action, in distinction from the action struck down in *Baxter*. Exxon stresses that when the Baxter applicant erroneously requested the PTO to cancel all of the claims, the PTO did so; the PTO then notified Baxter that the application was incomplete because it lacked claims, and Baxter filed a set of claims five weeks after the prior application had become abandoned. Baxter then petitioned for the benefit of the date of the original submission, and the PTO granted the petition. The Federal Circuit held that because the PTO cancelled Baxter's claims the statutory requirement that an application must have claims was not met, and that this requirement could not be waived retroactively in order to recover the original filing date.

Unlike the Baxter application, the Exxon application was never without claims, for the PTO did not accept and act on Exxon's erroneous instruction. Exxon argues that the PTO has discretion, in administering patent application procedures, to adopt practices that avert procedural errors. Exxon states that due to this

practice the Exxon application was never without a claim.

The district court ruled that the PTO could not administratively correct Exxon's erroneous instruction "for filing purposes only." The court held that Exxon's instruction cancelled claims 1–11 when it was submitted to the PTO, whether or not the PTO carried out the instruction. The court held that "while [the PTO] may have been following its internal procedures in retaining claim 1 in violation of Exxon's instructions, it was not statutorily permitted to do so." The inquiry thus is whether the PTO was statutorily permitted to act to preserve a claim for filing purposes.

**B**

█ Administrative agencies must conform with their governing statutes and regulations. Within this framework, agencies are authorized to adopt rules and procedures by which they implement their responsibilities and fulfill their mission. We thus must consider whether the PTO was entitled to interpret its statutory authority as it had in this case, whereby the applicant's instruction to cancel all claims was administratively modified, thereby averting illegality and implementing the applicant's instruction to file a continuation application.

We have been directed to no statutory or regulatory restraint on the PTO's authority to adopt such a saving procedure. No law or regulation prohibits the PTO from acting to preserve the applicant's compliance with the filing requirements. The PTO is not barred from refusing to enter an improper amendment or execute an illegal instruction. Thus MPEP § 711.01 provided that an amendment cancelling all claims "is not an express abandonment. Such an amendment is regarded as nonresponsive and should not be entered." That the amendment if entered

would be fatal to the application does not impose an obligation on the PTO to enter it, or render its entry self-executing. To the contrary, MPEP § 714.20 authorizes the entry of part of an amendment, when such action would avert harm to the applicant.

■ The PTO properly can refuse to follow an impermissible instruction that would cause a mistake and loss of rights. *Cf. Helfgott & Karas v. Dickenson,* 209 F.3d 1328, 1330, 54 USPQ2d 1425, 1426 (Fed.Cir.2000) ("Even if total elimination of mistakes is an illusory goal, their reasonable mitigation should not be.") No statute is violated by such a refusal, and the formulation of procedures is within the administrative discretion of the agency. The Court stated in *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 524, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978), "this Court has for more than four decades emphasized that the formulation of procedures was basically to be left within the discretion of the agencies to which Congress had confided the responsibility for substantive judgments."

■ Judicial deference to the details of agency procedures derives from recognition of the agency's familiarity with the problems associated with the agency's mission. *See Martin v. Occupational Safety and Health Review Comm'n,* 499 U.S. 144, 153, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991) ("historical familiarity and policymaking expertise account in the first instance for the presumption that Congress delegates interpretive lawmaking power to the agency rather than to the reviewing court"). Thus deference is owed to the agency's choice of its procedures to implement its assignment. *See, e.g., Federal Communications Comm'n v. Schreiber,* 381 U.S. 279, 290–91, 85 S.Ct. 1459, 14 L.Ed.2d 383 (1965) (administrative agencies are in better position than courts to design proce-

dural rules adapted to the agency's problem). Deference to PTO procedures was discussed in *Hyatt v. Boone,* 146 F.3d 1348, 47 USPQ2d 1128 (Fed.Cir.1998), wherein this court observed:

> Any technical deficiency in meeting the formal requirements of Rule 60 must be viewed in light of the [PTO's] acceptance of the applications as in compliance with the Rule. Regularity of routine administrative procedures is presumed, and departure therefrom, should such have occurred, is not grounds of collateral attack.

*Id.* at 1355, 146 F.3d 1348, 47 USPQ2d at 1133.

Although the PTO has no authority to waive the statutory requirement that every patent application must have at least one claim when filed, see *Baxter,* the Exxon application was not without a claim because the PTO acted to avert this defect. By this action, compliance with the statutory requirement was preserved, for there was no period during which there were no claims in the application. The PTO acted within its authority in modifying the plainly incorrect instruction. The judgment of invalidity on this ground is reversed.

## II

■ The district court granted Exxon's motion to strike Phillips' defense of "interference estoppel." The court ruled that this defense has no applicability outside of internal PTO procedures, and that any procedural error, whether by the examiner or the applicant, is not a ground of patent invalidity. Phillips appeals this ruling.

The asserted procedural error arises from the interference involving the second Exxon application in this chain, wherein the examiner designated certain claims as subject to rejection if priority were lost as to the count of the interference. The interference count was direct-

ed to unsubstituted metallocene catalysts; the designated claims were generic to both unsubstituted and substituted metallocene catalysts. After Exxon lost the interference it continued to prosecute claims to substituted metallocene catalysts. Phillips argues that Exxon was estopped to do so.

Phillips states that Exxon was obligated to ascertain the patentability of this subject matter during the interference, by filing a motion asking the interference examiner to de-designate the claims designated as subject to rejection as unpatentable over the count. Phillips states that this inaction estopped Exxon from seeking a patent on the substituted metallocenes, whether or not they are patentably distinct from the count of the interference. Phillips states that the patent obtained by Exxon is *per se* invalid because this procedure was not followed.

The district court observed that no court has recognized this ground of patent invalidity. Assuming that an irregularity occurred (although its nature is not clear to us) the district court ruled that a procedural lapse in an interference proceeding does not affect whether the claims are valid or enforceable under the laws of validity and enforceability. No court has held otherwise. *See, e.g., Exxon Corp. v. Mobil Oil,* No. H–96–3795 (S.D.Tex. Aug. 12, 1998) (holding that interference estoppel is not a valid defense); *Baxter Int'l Inc. v. Cobe Lab., Inc.,* No. 89 C 9460, 1991 WL 288828 (N.D.Ill. Dec. 26, 1991) (denying motion for summary judgment on interference estoppel issue due to genuine issues of material fact), *recons. denied,* 1992 WL 151894 (N.D.Ill. June 15, 1992); *Chemetron Corp. v. Airco, Inc.,* 198 USPQ 119, 125–26, 1976 WL 21030 (N.D.Ill.1976) (questioning applicability of interference estoppel as invalidity defense). The two cases that Phillips cites in support of its argument, *In re Deckler,* 977 F.2d 1449, 24

USPQ2d 1448 (Fed.Cir.1992) and *In re Kroekel,* 803 F.2d 705, 231 USPQ 640 (Fed.Cir.1986), relate to prosecution within the PTO, not to the validity of an issued patent claiming subject matter found to be patentable. Neither *Kroekel* nor *Deckler* holds that a possibly imperfect interference procedure is a defense in an infringement action, whether the imperfection was due to the examiner, the applicant, or both.

■ The district court correctly observed that the established defenses of invalidity and unenforceability remain available to Phillips, without opening to collateral attack the internal details of interference practice. "Absent proof of inequitable conduct, the examiner's or the applicant's absolute compliance with the internal rules of patent examination becomes irrelevant after the patent has issued." *Magnivision, Inc. v. Bonneau Co.,* 115 F.3d 956, 960, 42 USPQ2d 1925, 1929 (Fed.Cir.1997).

The district court's action in striking the defense of interference estoppel is affirmed.

*REVERSED AND REMANDED; CROSS APPEAL AFFIRMED.*